IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH T. SINGLETON** ) | | |
| ) | FILED: APRIL 25, 2008 | |
| **Plaintiff,** ) | 08CV2349 EDA | |
| v. ) | NO: JUDGE ANDERSEN | |
| ) | MAGISTRATE JUDGE KEYS | |
| ) | | |
| **LOCOMOTIVE ENGINEERS and** ) | | |
| **CONDUCTORS MUTUAL PROTECTION** ) | **JURY DEMANDED** | |
| **ASSOCIATION** ) | | |
| ) | | |
| **Defendant.** ) | | |

## COMPLAINT

**NOW COMES** the Plaintiff, **KENNETH T. SINGLETON**, by and through his attorneys, Law Office of John Bishof, PC, and for his Complaint against the Defendant, **LOCOMOTIVE ENGINEERS and CONDUCTORS MUTUAL PROTECTION ASSOCIATION** states unto this Honorable Court as follows:

### JURISDICTION, VENUE AND PARTIES

1. This court has jurisdiction of this claim pursuant to 28 U.S.C. §1322.

2. Plaintiff, Kenneth T. Singleton, is now and at all times relevant hereto, a resident of Lake County, Indiana.

3. Defendant, Locomotive Engineers and Conductors Mutual Protective Association (hereinafter "LE&CMPA"), is now and at all times relevant hereto, a cooperative assessment association incorporated in 1910 under the laws of the State of Michigan and regulated by the Michigan Insurance Department. LE&CMPA has its principal place of business in the city of Detroit, county of Wayne, state of Michigan.

4. The amount in controversy in this claim is in excess of $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(a).

6. The defendant, LE&CMPA, is authorized and engaged in insurance business in the county of Cook, state of Illinois.

7. Plaintiff obtained the LE&CMPA insurance policy in November 2001 in connection with his employment for Union Pacific Railroad located within this district in the county of Cook, state of Illinois.

8. The events that give rise to plaintiff's claims all took place in the county of Cook state of Illinois.

## BACKGROUND

9. The object of **LE&CMPA** is the establishment and management of a fund for the payment of fixed and definite amounts for loss of wages to the bona fide members who have loss wages due to suspension, termination, or were withheld from service by their railroad employer.

10. Plaintiff, Kenneth T. Singleton, a brakeman/foreman for the Union Pacific Railroad, was a member of **LE&CMPA** in good standing from November 9, 2001 through April 2005. Plaintiff has tendered all application fees, premium payments and any assessments in a timely manner to defendant.

11. The funds of **LE&CMPA** are derived from application fees, dues of members and periodic assessments. The funds are principally derived from premium payments made by the membership.

12. On or about January 7, 2005, plaintiff was charged by his employer, Union Pacific Railroad, of allegations of dishonest behavior with regard to the theft of computer equipment, specifically a computer mouse, owned and maintained by the Belt Railway

Company of Chicago located in its Railroad crew room in Bedford Park, Cook County, Illinois, on December 30, 2004.

13. The formal investigation was scheduled for January 13, 2005 and finally held on February 22, 2005 and March 21, 2005. (Attached as Exhibit A, Letters regarding investigation).

14. On March 30, 2005, plaintiff received a letter of dismissal from Union Pacific stating that his employment was terminated. (Attached as Exhibit B, Termination Letter).

15. Plaintiff was reinstated by Public Law Board no. 5263 on September 27, 2006 with a finding of no dishonest behavior or theft. (Attached as Exhibit C, Public Law Board Award).

## COUNT I (Breach of Contract)

1-15. Plaintiff realleges paragraphs 1-15 of this Complaint as paragraphs 1-15 of this Count I, and by that reference, incorporates those allegations herein.

16. The LE&CMPA policy provides that a legal action shall be brought to recover on the policy within three years from the time written proof of loss is required to be furnished, which is within ninety days after termination; therefore plaintiff has until June 28, 2008 to file his complaint. (Attached as Exhibit D, LE&CMPA Policy).

17. Plaintiff gave his notice of claim to an agent of LE&CMPA at the end of February 2005 via telephone.

18. On or about March 22, 2005, plaintiff's counsel followed up with a written inquiry to LE&CMPA regarding the delay in plaintiff receiving his benefits. (Attached as Exhibit E, Letter from Knee).

19. Plaintiff met all of the conditions precedent to receive benefits from defendant.

20. Notwithstanding the fact that plaintiff was a member of defendant in good standing, provided all information requested and met all the conditions required, defendant denied plaintiff's claim on May 16, 2005. (Attached as Exhibit F, Denial).

21. At the time plaintiff was discharged, the fixed and definite amount due and owing to plaintiff as a member in good standing was Two Hundred One Dollars ($201.00) per day, up to Three Hundred (300) days for a total of Sixty Thousand Three Hundred ($60,300.00) Dollars. (Attached as Exhibit G, Policy Schedule).

22. At this time, no full or partial payment of benefits due to Plaintiff has been made by Defendant, LE&MPCA, or received by Plaintiff.

23. In addition, plaintiff seeks a declaratory judgment, over which this Court has the authority to declare the rights and remedies of the respective parties pursuant to 735 ILCS 5/2-701.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendant LE&CMPA for recovery of damages in an amount of Sixty Thousand Three Hundred Dollars ($60,300.00), together with interest thereon, and for his costs and disbursements herein and for such other and further relief to which he may appear entitled.

## COUNT II (Unreasonable and Vexatious Delay)

For Count II of his complaint, plaintiff states:

1-23. Plaintiff re-alleges paragraphs 1-23 of this Complaint as paragraphs 1-23 of this Count II, and by that reference, incorporates those allegations herein.

24. There is and was in effect in the State of Illinois at all times relevant hereto, a statute codified at 215 ILCS 5/155 (formerly, Ill.Rev.Stat. 1989 ch. 73 ¶767) which allows the Court to assess penalties and attorneys' fees against an insurance company that acts in a manner that is vexatious and unreasonable.

25. The foregoing described conduct constitutes an unreasonable and vexatious delay or refusal of payment on a claim since defendant has refused to make payment despite the submission of valid and well-supported proofs of claim; and there is no legitimate dispute as to plaintiff's entitlement to benefits, and plaintiff has been forced to file suit against her insurer in order to recover benefits.

WHEREFORE, plaintiff prays for the following relief:

A. That plaintiff receives judgment in his favor and against the defendant as provided for in Count I of this Complaint.

B. That defendant be assessed the maximum penalty allowable pursuant to 215 ILCS 5/155, and that defendant be ordered to pay plaintiff's attorney's fees and court costs.

RESPECTFULLY SUBMITTED,

BY:    s/ John S. Bishof, Jr.
Law Office of John Bishof P.C.
77 West Washington St, Suite 1910
Chicago, IL 60602
PH: 312-630-2048 FAX: 312-630-2085
#219326



## UNION PACIFIC RAILROAD
OFFICE OF THE GENERAL SUPERINTENDENT
301 W. Lake Street
Northlake, IL 60164

January 31, 2005

**CERTIFIED MAIL NO.: 7003 3110 0006 4843 1245**
**RETURN RECEIPT REQUESTED**
SS # 322 62 3223

Kenneth T. Singleton
8447 Taney Street
Merrillville, IN 46410-6925

Dear Sir:

The investigation originally scheduled for January 13, 2005 and postponed until January 19, 2005 is rescheduled for Tuesday, February 22, 2005 at 10:00 hours.

The location remains the same as in the original investigation notice.

The charges remain the same as in the original investigation notice.

**This investigation will be conducted in conformity with the (BLE/UTU) Discipline Agreement and you are entitled to representation and witnesses as provided for in that Agreement.**

Any discussions regarding this investigation including waiver/conference purposes, or any request for postponement from your Representatives or the employee, must be made personally to Bill Watson, MOP, at (708) 649-5119. Requests for postponement must be confirmed, in writing via FAX # 708 649-5422.

Yours truly,

Laurie Cosentino
Manager Administration

cc:  Dave Wells, Local Chairman
     Jeff Utroska, MOP
     Bruce Finger, Special Agent



EXHIBIT A

**UNION PACIFIC RAILROAD**
OFFICE OF THE GENERAL SUPERINTENDENT
301 W. Lake Street
Northlake, IL 60164

January 19, 2005

**CERTIFIED MAIL NO.: 7004 0750 0002 1428 3582**
**RETURN RECEIPT REQUESTED**
SS # 322 62 3223

Kenneth T. Singleton
8447 Taney Street
Merrillville, IN 46410-6925

Dear Sir:

The investigation originally scheduled for January 13, 2005 and rescheduled for January 19, 2005 at 10:30 hours has been postponed at the request of Dave Wells, Local Chairman.

The location will remain the same as in the original investigation notice.

The charges remain the same as in the original investigation notice.

This investigation will be conducted in conformity with the (BLE/UTU) Discipline Agreement, and you are entitled to representation and witnesses as provided for in that Agreement.

Any discussions regarding this investigation including waiver/conference purposes, or any request for postponement from your Representatives or the employee, must be made personally to Bill Watson, MOP at (708) 649-5119. Requests for postponement must be confirmed, in writing via FAX # 708 649-5422.

Yours truly,

Laurie Cosentino
Manager Administration

cc:   Dave Wells, Local Chairman
      Jeff Utroska, MOP
      Bruce Finger, Special Agent

(3)

# UNION PACIFIC RAILROAD
OFFICE OF THE GENERAL SUPERINTENDENT
301 W. Lake Street
Northlake, IL 60164

January 10, 2005

**CERTIFIED MAIL NO.: 7004 2510 0004 7711 9763**
**RETURN RECEIPT REQUESTED**
SS # 322 62 3223

Kenneth T. Singleton
8447 Taney Street
Merrillville, IN 46410-6925

Dear Sir:

The investigation originally scheduled for January 13, 2005 at 10:00 hours has been rescheduled at the request of Dave Wells, Local Chairman, for Wednesday, January 19, 2005 at 10:30 hours.

The location remains the same as in the original investigation notice.

The charges remain the same as in the original investigation notice.

**This investigation will be conducted in conformity with the (BLE/UTU) Discipline Agreement and you are entitled to representation and witnesses as provided for in that Agreement.**

**Any discussions regarding this investigation including waiver/conference purposes, or any request for postponement from your Representatives or the employee, must be made personally to Bill Watson, MOP, at 708 649-5119. Requests for postponement must be confirmed, in writing via FAX # 708 649-5422.**

Yours truly,

Laurie Cosentino
Manager Administration

cc:   Dave Wells, Local Chairman
      Jeff Utroska, MOP
      Bruce Finger, Special Agent

①

**UNION PACIFIC RAILROAD**
OFFICE OF THE SUPERINTENDENT
301 W. Lake Street
Northlake, IL 60164

January 7, 2005

**CERTIFIED MAIL NO.: 7004 2510 0004 7711 9749**
**RETURN RECEIPT REQUESTED**
SS # 322 62 3223

Kenneth T. Singleton
8447 Taney Street
Merrillville, IN 46410-6925

Dear Sir:

Please report to Proviso Administration Building, on Thursday, January 13, 2005 at 10:00 hours for investigation and hearing in connection with your responsibility, if any for:

"your alleged dishonest behavior with regard to the theft of computer equipment from the BRC Railroad crew room on December 30, 2004 while employed as a Brakeman/Foreman with the Union Pacific Railroad working job 4X89 on duty at 04:00 hours on December 30, 2004".

This investigation will be conducted in conformity with the (BLE/UTU) Discipline Agreement, and you are entitled to representation and witnesses as provided for in that Agreement.

The proposed rule infraction is a Level 5, which will result, under the progressive discipline system as Permanent Dismissal OR "Final Level" under the Behavior Modification Policy, which is a Hearing.

Any discussions regarding this investigation or the option of the Behavior Modification Policy, or any request for postponement from your Representatives or the employee, must be made personally to Bill Watson, MOP at 708 649-5119. Requests for postponement must be confirmed, in writing via FAX # 708 649-5422.

Yours truly,

Laurie A. Cosentino
Manager Administration

cc: Dave Wells, Local Chairman
Jeff Utroska, MOP
Bruce Finger, Special Agent

UNION PACIFIC RAILROAD
OFFICE OF THE GENERAL SUPERINTENDENT
301 W. Lake Street
Northlake, IL 60164

March 30, 2005

**CERTIFIED MAIL NO.: 7004 2510 0007 5349 3433
RETURN RECEIPT REQUESTED**
SS # 322 62 3223

Kenneth T. Singleton
8447 Taney Street
Merrillville, IN 46410-6925

Dear Sir:

Refer to the Notice of Formal Investigation sent you under date of January 7, 2005.

After carefully considering the evidence adduced at the hearing held in Northlake, Illinois, on February 22, 2005 and March 21, 2005, I find that the following charges against you have been sustained:

"your alleged dishonest behavior with regard to the theft of computer equipment from the BRC Railroad crew room on December 30, 2004 while employed as a Brakeman/Foreman with the Union Pacific Railroad working job 4X89 on duty at 04:00 hours on December 30, 2004".

Therefore, you are in violation of General Code of Operating Rules 1.6, effective April 2, 2000.

This incident is a Level 5 Violation. Based on the Progressive Discipline Policy you are now assessed Level 5 Discipline, which is Permanent Dismissal (Final Level under Behavior Modification Policy).

You are hereby dismissed from the service of the company effective immediately.

David K. Barnes
General Superintendent

Enclosures: Transcript / Exhibits

cc: Dave Wells, Local Chairman via Certified Mail No.: 7004 2510 0007 5349 3440 – Return Receipt Requested
Robert Smith, VLC via Certified Mail No.: 7004 2510 0007 5349 3457 – Return Receipt Requested


EXHIBIT B

UTU CASE # AL304-528-23/MA
UP FILE # 1420273



## PUBLIC LAW BOARD NO. 5263

Case No. 206
Award No. 206

| | |
|---|---|
| United Transportation Union ) | |
| ) | |
| vs ) | PARTIES TO DISPUTE |
| ) | |
| Union Pacific Railroad Company ) | |

### STATEMENT OF CLAIM

Foreman Kenneth T. Singleton, for the reinstatement to the services of the Union Pacific Railroad Company (former C. & N. W. Railway Company), with vacation and seniority rights unimpaired, the payment of vacation allowance for time wrongfully discharged, and the scheduling of a vacation period consistent with seniority ranking, in addition to the payment of any and all health and welfare benefits until reinstated, including reimbursement for any medical payments made while discharged, the payment of all Railroad Retirement taxes based on all lost and realized earnings, and reimbursement for any expenses related to the pursuit of alternative employment, and removal of this discipline from the Claimant's record and that he be compensated for any and all lost time with compound interest at 1.5 percent monthly, including compensation for time spent attending an investigation held on February 22, 2005, when charged with an alleged responsibility for "your alleged dishonest behavior with regard to the theft of computer equipment from the BRC Railroad crew room on December 30, 2004 while employed as a Brakeman/Foreman with the Union Pacific Railroad working job 4X89 on duty at 04:00 hours on December 30, 2004.

### FINDINGS

This Board finds the parties herein are Carrier and Employee within the meaning of the Railway Labor Act, as amended, and that this Board has jurisdiction over the dispute involved herein. The parties to said dispute were given due and proper notice of hearing thereon.

On March 30, 2005 the Carrier dismissed the Claimant from its service. As a result of an investigation on February 22 and March 21, 2005 the Carrier found the Claimant violated Rule 1.6 on December 30, 2004 when he allegedly stole a computer mouse from the Belt Railway of Chicago on December 30, 2004.

On December 30, 2004, the Claimant was called off the Chicago Freight Terminal's yard extra board to work assignment 4x89 on duty at 0400. The Claimant was instructed to take two (2) engines, UP 6778 and UP 7068, to the BRC yard. At approximately 10:00 AM the Claimant went into the BRC crew room to log on to the computer. The Claimant was unable to log on to the computer and left the crew room. Five (5) hours after the Claimant left the crew room someone reported that the mouse for one (1) of the computer's was missing. The BRC railroad alleged that the Claimant stole the mouse.



EXHIBIT C

On the first day of the hearing the Chief of Police for the Belt Railway Company testified that at 3:50 PM on December 30, 2004, they had a report of a missing computer mouse in the BRC crew room. He testified that the BRC has a digital fiber optics camera system to monitor various parts of the property including the crew room. He was told that a Union Pacific crew was in the BRC yard at 10:00 AM and turned in two (2) engines. He then contacted the Union Pacific police and brought the tape in to see if they could identify the crew member. The Carrier's Manager of Operating Practices finally confirmed that the Claimant was the crew member on the tape. The Claimant testified that he was in the BRC crew room and that he is on the tape but he did not steal the computer mouse.

A review of the testimony shows that there was a difference of opinion as to the type mouse that was allegedly stolen.

At the end of the first day of the hearing the carrier had the Claimant arrested by the Bedford Park, Illinois Police for theft of the computer mouse. The Claimant was charged with theft and bond was set by Circuit Court of Cook County. On August 17, 2005, the Claimant went in front of the Circuit Court of Cook County for his trial. The Claimant entered a plea of not guilty and the court found the Claimant not guilty. The court refunded the Claimant's bond.

The testimony also reveals that on January 7, 2005 a mouse showed up in the crew room, unexplained and not on tape. On the second day of the hearing the BRC's MIS Network Administrator testified that the mouse found on January 7 was the same make as the alleged stolen mouse.

The judge in the Claimant's case said the following:

He was there, it was gone, but so were some other people who came in after that, but he did put something in his case, but I couldn't see what it was.

I believe that was the stipulated testimony by the parties, it was impossible to see what was put in there.

He may have done it, I don't know, but it could not be proven beyond a reasonable doubt that he took the CD mouse.

This Board is well aware that in determining guilt or innocence in industrial justice the threshold of evidence does not require proof beyond a reasonable doubt.

However, the Carrier does have the burden of proving the Claimant violated its Rules. This case is rife with contradictions as to the type of mouse. While there is tape of the Claimant in the BRC crew room, there are no other tapes. This Board has been furnished the same tape as the judge. Like the judge this Board is unable to determine from the tape that the Claimant took the mouse.

2

Accordingly, the Carrier has not met its burden that the Claimant stole the mouse. Claimant will be reinstated with seniority unimpaired and pay for all time lost. The discipline is to be removed from the Claimant's record.

### AWARD

Claim sustained. Carrier is ordered to comply with this Award within 30 days from its date.

R.G. Richter, Chairman
Neutral Member

R.A. Henderson      DISSENT
Carrier Member

M.J. Reedy
Employee Member

Dated 11/17/06

JAN-1-2003 12:23P FROM: TO:13126322005 P:5
Mar 03 05 09:21a   KENNETH T. SINGLETON   2197362341   p.1

# Locomotive Engineers & Conductors
# Mutual Protective Association

A Non-Profit Co-operative Assessment Association
INCORPORATED IN 1910 UNDER THE LAWS OF THE STATE OF MICHIGAN
DETROIT, MICHIGAN 48229-3602



"Since 1910"

(Herein Referred To As The Association)



HEREBY AGREES TO INDEMNIFY KENNETH T SINGLETON SR.

and is employed by UNION PACIFIC

to the extent and upon terms and conditions hereinafter contained or endorsed hereon against loss of wages caused by

| Policy Number | Monthly Assessment | Effective Date |
|---|---|---|
| 0209472A | $85.75 | 11/9/01 |

## DISCHARGE OR SUSPENSION

If while this policy is in full force and effect this member commits an act for which he is discharged or suspended as a penalty or method of discipline by the railroad company or other transportation company, which employs him at the time of the act, resulting in loss of wages, the Association will pay a $201.00a day benefit as shown below in schedule.

### PREFERRED

| Maximum Days | Years In Force | Maximum Benefit |
|---|---|---|
| 180 | 1st Year | $36,180.00 |
| 240 | 2nd Year | $48,240.00 |
| 300 | 3rd Year | $60,300.00 |
| 365 | 4th Year and After | $73,365.00 |

### POLICY ALWAYS RETURNS TO FULL MAXIMUM VALUE

Any amounts paid on claims arising from suspension or discharge are not deductible from the maximum as provided for above. Following completion of claim payments for suspension or discharge policy reverts immediately to current maximum value.

TO THE MEMBER. This policy may be cancelled within ten days after you receive it for full refund by mailing it to the Association offices, or by surrendering the policy to a Member-Representative, with a written request for cancellation.

By virtue of the acceptance of the application for this protection by the Association, the member becomes a member of the Association and is entitled to be present either in person or by proxy and to vote at all meetings of the members of the Association at Detroit, Michigan 48226, at 3:00 PM on the second Tuesday in October of each year. By acceptance of this policy, the member is hereby charged with notice of regular Annual Meeting of the Association. The rights of the member and the Association under this policy shall be governed by the laws of the State of Michigan. In the event that contingency should cause the regular assessment on this policy to prove inadequate to pay this policy's share of claims, expenses and reserves, additional special assessments may be required.

assessment or assessments for the period defaulted shall reinstate the policy, but only to cover incidents occurring or originating after the date of such reinstatement that resulted in a loss because of discharge or suspension. If the Association has been notified by the member that default in assessments was due to the following (1) Cut off due to slack business, (2) Leave of absence granted by employing company for thirty (30) days or more, (3) Military service, (4) Change in position by the same employer where discharge or suspension protection is not needed; then upon return to employment if reinstatement is effected by the payment of assessment for the current month of return to employment, the member shall be eligible for all benefits to which the member was eligible during the calendar month employment ceased.

4. Written notice of discharge or suspension, for which claim may be made upon this policy, setting forth the reasons for such loss, must be given the Association at its Home Office within thirty (30) days after the date of discharge or suspension. The Association upon receipt of such notice, will furnish to the member such forms as are usually furnished by it for filing proofs of claim. If such



EXHIBIT D

JAN-1-2002 12:24P FROM:
Mar 03 05 09:21a    KENNETH T. SINGLETON            2197362341            p.2

## THIS POLICY PROVIDES INDEMNITY FOR DISCHARGE OR SUSPENSION
### This policy is cancelable by the Association

This policy does not cover discharge or suspension resulting directly or indirectly, wholly or partly from any of the following causes: use of or possession of intoxicating liquors or narcotics; garnishment; soliciting his own discharge or insubordination; strikes; lockouts; knowingly disobeying orders, rules or instructions; failure or refusal to meet requirements of any working agreement between any labor organization and the employer; asleep on duty; discharge or furlough on account of depression in business; missing calls; failure or refusal to accept call, reporting late for duty, or not being available for call; failure to pass any test or examination either physical or mental; personal injury or disability; retirement on pension. The cause assigned by the employer shall conclusively determine the liability of the Association.

### REQUIRED PROVISIONS

**Time of Payment of Claims.** Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payments will be paid weekly and any balance remaining unpaid upon the termination of liability, will be paid immediately upon receipt of due written proof.

**Legal Actions.** No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Conformity With State Statutes.** Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes.

**Claim Forms.** The Association, upon receipt of notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

**Proof of Loss.** Written proof of loss must be furnished to the Association at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Association is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

### ADDITIONAL PROVISIONS

1. This policy is issued in consideration of the statements and agreements contained in the written application on file with the Association, each of which statements the member warrants to be true.

2. The schedule on the face page of this policy shows the effective date and the amount of assessment due each month. All assessments are due in advance on or before the last day of the month for the following month. Fifteen (15%) per cent discount will be allowed on all assessments paid twelve (12) months in advance. No notice of regular assessments shall be required. Members shall continue to pay assessments during the time indemnity is being paid or claimed hereunder unless the policy is cancelled as hereinafter set forth. The word premium is used in the provisions of this policy interchangeably with the word assessment. For example, monthly assessment is monthly premium.

3. If default be made in the payment of the agreed assessment for this policy, the subsequent acceptance by the Association of the assessment or assessments for the period defaulted shall reinstate the policy, but only to cover incidents occurring or originating after the date of such reinstatement that resulted in a loss because of discharge or suspension. If the Association has been notified by the member that default in assessments was due to the following (1) Cut off due to slack business, (2) Leave of absence granted by employing company for thirty (30) days or more, (3) Military service, (4) Change in position by the same employer where discharge or suspension protection is not needed; then upon return to employment if reinstatement is effected by the payment of assessment for the current month of return to employment, the member shall be eligible for all benefits to which the member was eligible during the calendar month employment ceased.

4. Written notice of discharge or suspension, for which claim may be made upon this policy, setting forth the reasons for such loss, must be given the Association at its Home Office within thirty (30) days after the date of discharge or suspension. The Association upon receipt of such notice, will furnish to the member such forms as are usually furnished by it for filing proofs of claim. If such

forms are not so furnished within fifteen days after the receipt of such notice, the member shall be deemed to have complied with the requirements of this policy as to proof of claim upon submitting within sixty (60) days from the date of discharge or suspension, written proof covering the occurrence, character and extent of discharge or suspension for which claim is made, provided that the Association may require proof or further proof, in form satisfactory to it, of the member's average monthly wages at the date of payment of the last assessment prior to loss.

5. Upon receipt of proofs of claim from a member of the Association if said claim comes within the provision of the policy and the policy was in full force and effect at the time of committing the act which resulted in discharge or suspension, the Association will immediately start payment of indemnity, same to be paid at the daily rate shown in the schedule on the face page hereof and payments are to continue until reinstatement or employment by any other transportation company or until the maximum provided for in the schedule on the face page hereof shall have been paid. If it is found upon subsequent investigation that any of the statements by the member or witnesses are untrue, all future payments shall be discontinued and all payments made to the member shall be returned to the Association.

6. Indemnity covering discharge or suspension is payable only to the member named herein and may not be transferred or assigned, and all right to such indemnity whether due or not will be terminated on the death of the member, except accrued benefits due to the member at the time of his death shall be payable in accordance with the terms of the policy.

7. In the event the benefit payable hereunder for discharge or suspension is covered in a like policy or policies now held or hereafter acquired by the member and such combined benefits are greater than the member's average monthly wages earned at the effective date of this policy (the date of payment of the last assessment prior to loss), the benefits payable hereunder shall be such proportion of the said average monthly wages as the benefit herein provided bears to the aggregate amount of benefits under all policies, and a proper pro rata refund of assessments paid under this policy shall be made to the member, but in no event shall such refund exceed the pro rata part of the twelve monthly assessments.

8. The Association may cancel this policy or any Supplementary Contract attached hereto at any time by written notice, stating when not less than five days thereafter such cancellation shall be effective, delivered to the Insured or mailed to his last address as shown by the records of the Association, together with cash or the Association's check for the unearned portion of the assessment actually paid by the Insured, and such cancellation shall be without prejudice to the rights of the member to any claim originating prior thereto.

9. Grace Period, Suspension and Discharge Benefits. A grace period of ten (10) days will be granted for payment of each premium after the first premium, during which period this policy shall continue in force, subject to the right of the Association to cancel in accordance with the cancellation provision hereof.

IN WITNESS WHEREOF, the LOCOMOTIVE ENGINEERS AND CONDUCTORS MUTUAL PROTECTIVE ASSOCIATION has, by its President and Secretary executed and attested this policy at Detroit, Michigan 48226-3602, on the date shown on the face page of this policy, which is the first day of indemnity hereunder.

*William L Davis*  
President

*Avis L. Fink*  
Secretary

**L.E.&C.M.P.A Privacy Policy**

L.E.&C.M.P.A. does not sell or give away policyholder or prospect contact or personal information, including income, coverage, claims, etc., unless required legally to do so by appropriate state, federal, or regulatory authorities. As a mutual insurance company governed by the requirements of the State of Michigan Insurance Commissioner, L.E.&C.M.P.A. specifically complies with restrictions and guidelines imposed by that state. Representatives, managers, and employees are prohibited from using the contact and/or personal information of members and prospects for any purpose other than Association business.

To report a violation of this policy or check on your membership status, claim or dividend history, policy size, or current mailing address, please use our website at http://www.leempa.org and the Internet ID issued to you with a new or additional policy. Do not give this Internet ID to anyone else. You can also call the home office at (800) 514-0010, or FAX (877) 633-1910. Representatives and managers are required to know the correct identity of a caller by policy number before divulging sensitive information. Information on claims and dividends used for promotional purposes will not use an individual's name unless authorized by that person.

# WILLIAM F. KNEE, LTD.
## Attorney at Law

1900 Spring Road
Suite 204
Oak Brook, Illinois 60523

March 22, 2005

VIA MAIL and FAX 877-633-1910

Avis L. Finch
Locomotive Engineers & Conductors
Mutual Protective Association
535 Griswold, Suite 1210
Detroit, MI 48226-3689

      RE: Kenneth Singleton
        Policy Number 0209472
        Claim No. 096-693

Dear Avis Finch:

I represent Kenneth Singleton. I am in possession of his completed Notice of Claim and the Witness Statement by David Wells, Mr. Singleton's Union Representative. IT seems to me that under the circumstances of Mr. Singleton's situation, there should be no further delay in the processing of his claim.

Kindly advise in writing as soon as possible regarding when Mr. Singleton's benefits will be received.

I look forward to your reply.

Very truly yours,


William F. Knee

WFK/ms

Enclosure: Claim Form and Witness Statement

---

Telephone: 630/571-7777          Facsimile 630/954-1984
www.kneelawoffice.com

EXHIBIT
E

May 16, 2005

Kenneth T. Singleton, Sr.
8447 Taney Street
Merrillville, IN 46410

                        Re: Claim No. 096-693
                            Policy No. 0209472

Dear Sir and Brother:

    As a follow up to our letter of March 29, 2005, to your attorney, William F. Knee, we have received copy of transcript of investigation covering the incident of December 30, 2004, along with Company notice indicating you have been dismissed from service and regret your claim for discharge benefits cannot be approved for payment.

    Your policy is quite specific in stating under Exceptions it does not cover discharge or suspension resulting directly or indirectly, wholly or partly from knowingly disobeying orders, rules or instructions. Dishonest behavior with regard to the theft of computer equipment would come within this Exception. It is further stated in our policies that the cause assigned by employer shall conclusively determine the liability of the Association. Therefore, your claim is denied.

    In taking this position the Association does not intend to, and does not, waive any rights or defenses it may have under the policy, or otherwise.

    We are sorry we must take this action but feel it is necessary in fairness to all the members of the Association not to pay a claim that is specifically excluded under the Exceptions of our policies.

    Premiums are payable on a consecutive monthly basis when out of service due to discipline whether benefits are payable or not. Since we have been receiving premiums on your policy through the Payroll Deduction Plan, if you wish to have your policy in force when you return to work, it will be necessary to send premiums at the rate of $83.75 a month direct to the Home Office starting with the month of April 2005.

                                                         Fraternally yours,

                                                          Avis L. Finch
                                                          Secretary

ALF:ls

C.C.: William F. Knee, Attorney at Law

EXHIBIT F

## MORE ABOUT OUR POLICIES

We made a study of the amount of discipline assessed throughout the country on our policies and found that the current practice seemed to indicate most actual suspensions consist of 30 to 60 days. In order to provide the peace of mind and actual coverage for these claims, and to cover those who are fired permanently, our #10 benefits have been extended to 300 days.

We strongly feel our policy should cover the needs of the majority of transportation employees in the event they are disciplined.

### SCHEDULE OF BENEFITS

1st year = 180 days
2nd year = 240 days
3rd year = 300 days

*Please review your policy for limitations and exclusions*

- The No. 10 Policy like all LE&CMPA policies reverts to the total maximum value as shown in its schedule of benefits after claim when a member is reinstated. This, of course, assumes consecutive premium payments have maintained the policy in force.
- There is no age limit stipulated for the issuance of the No. 10 Policy.
- Benefits for discipline are paid weekly through Electronic Funds Transfer (EFT) and continue until reinstated, offered reinstatement or until full amount available under policy is paid.
- There is no communication with officials of the transportation company concerning claims or other matters.
- Membership in the Association is strictly private.
- **The only restriction is that the policy, like all of our policies, is available to transportation employees who belong to a recognized labor organization who are in good standing.**



## No. 10 JOB INSURANCE

### LOW COST PROTECTION AGAINST THE MAJOR HAZARDS OF

- Held Out of Service for Suspension or Discharge Due to Discipline
- Accidental Death (Member)
- Accidental Death (Beneficiary - immediate and level benefit of $5,000)

**MAXIMUM FOR HELD OUT OF SERVICE – SUSPENSION AND DISCHARGE DUE TO DISCIPLINE**
Each $3 per day of protection under the No. 10 Policy costs $1.25 per month. (For example $12.00 a day policy costs $5.00 per month). Policy amounts for other coverage are the same rate.

| MAXIMUM DAYS | YEARS CARRIED | $30 A DAY Monthly Premium $12.50 | $51 A DAY Monthly Premium $21.25 | $60 A DAY Monthly Premium $25.00 | $81 A DAY Monthly Premium $33.75 | $90 A DAY Monthly Premium $37.50 | $102 A DAY Monthly Premium $42.50 | $120 A DAY Monthly Premium $50.00 | $150 A DAY Monthly Premium $62.50 | $201 A DAY Monthly Premium $83.75 | $252 A DAY Monthly Premium $105.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 180 | 1st YEAR | $5,400.00 | $9,180.00 | $10,800.00 | $14,580.00 | $16,200.00 | $18,360.00 | $21,600.00 | $27,000.00 | $36,180.00 | $45,360.00 |
| 240 | 2nd YEAR | 7,200.00 | 12,240.00 | 14,400.00 | 19,440.00 | 21,600.00 | 24,480.00 | 28,800.00 | 36,000.00 | 48,240.00 | 60,480.00 |
| 300 | 3rd YEAR & AFTER | 9,000.00 | 15,300.00 | 18,000.00 | 24,300.00 | 27,000.00 | 30,600.00 | 36,000.00 | 45,000.00 | 60,300.00 | 75,600.00 |

**MEMBERS ACCIDENTAL DEATH BENEFITS INCREASE ACCORDING TO SCHEDULE BELOW**

| | 1st YEAR | $5,400.00 | $9,180.00 | $10,800.00 | $14,580.00 | $16,200.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2nd YEAR | 7,200.00 | 12,240.00 | 14,400.00 | 19,440.00 | 21,600.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 60,480.00 |
| | 3rd YEAR & AFTER | 9,000.00 | 15,300.00 | 18,000.00 | 24,300.00 | 27,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 60,300.00 | 75,600.00 |

**NAMED BENEFICIARY PROTECTED AGAINST ACCIDENTAL DEATH FOR $5,000.00**

*THIS IS FOR INFORMATION PURPOSES ONLY. REFER TO THE ACTUAL POLICY FOR TERMS AND CONDITIONS OF COVERAGE.*

EXHIBIT G